| | | |
|---|---|---|
| JF ENTERPRISES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 CV 3759 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| FIFTH THIRD BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

JF Enterprises, LLC, brings this diversity action against Fifth Third Bank, alleging state law claims for breach of the covenant of good faith and fair dealing, negligence, negligent misrepresentation, and fraudulent misrepresentation. (R. 1, Compl.) Presently before the Court are Fifth Third's motions to dismiss the fraudulent misrepresentation claim under Federal Rule of Civil Procedure 9(b), to strike JF Enterprises' jury trial demand, and for leave to file counterclaims and to join additional counterclaim defendants under Rules 13, 19 and 20. (R. 4, Fifth Third's Mot. Dismiss; R. 6, Fifth Third's Mot. Strike; R. 36 Fifth Third's Countercl. Mot.) For the reasons stated below, Fifth Third's motions are granted.

### RELEVANT FACTS

JF Enterprises is a limited liability company doing business as a car dealer in Kansas City, Missouri. (R. 1, Compl. ¶ 1.) On or about December 7, 2005, JF Enterprises entered into a financing agreement with Fifth Third Bank to provide funds for the purchase of new and used vehicles at JF Enterprises' dealerships. (*Id.* ¶ 6.)

Beginning in December 2008, a business dispute arose between the parties. (*Id.* ¶ 14.)

To resolve the dispute, the parties entered into a Settlement Agreement on April 20, 2009. (*Id.* ¶ 21.) Under the terms of the Settlement Agreement, JF Enterprises acknowledged it and others (collectively referred to as "Borrowers") owed Fifth Third $3,755,857.69. (R. 4, Fifth Third's Mot. Dismiss, Ex. 1, Settlement Agreement ¶ 2.) The Borrowers agreed to immediately pay $1.6 million and to execute a promissory note in the amount of $500,000. (*Id.* ¶¶ 7–8.) Fifth Third agreed to extinguish $1,655,857.69 of debt. (*Id.* ¶ 7.) Both parties released their respective claims. (*Id.* ¶¶ 5–6.)

JF Enterprises alleges that it entered into a separate agreement with Fifth Third. (R. 1, Compl. ¶ 23.) This agreement required Fifth Third to allocate $604,302.36 in extinguished debt to JF Enterprises and the remaining amount to other Borrowers. (*Id.*) JF Enterprises claims that its tax planning took into account this allocation of the debt extinguishment. (*Id.* ¶ 25.) JF Enterprises claims that Fifth Third initially issued it a Form 1099-C, Cancellation of Debt, reflecting the agreed-to amount; however, Fifth Third then issued a second 1099-C allocating the full $1,655,857.69 to JF Enterprises. (*Id.* ¶ 32.) JF Enterprises claims that this increase in income and the multiple 1099-Cs issued by Fifth Third caused it to be audited by the IRS and will cause it to sustain damages between $330,000 and $500,000. (*Id.* ¶¶ 33–38.)

## PROCEDURAL HISTORY

On March 3, 2011, JF Enterprises filed suit in the Western District of Missouri. (R. 1, Compl.) In its complaint, JF Enterprises presents four claims: (1) breach of the covenant of good faith and fair dealing; (2) negligence; (3) negligent misrepresentation; and (4) fraudulent misrepresentation. (*Id.* ¶¶ 39–79.)

On March 5, 2011, Fifth Third filed two motions. First, Fifth Third filed a motion to dismiss for improper venue or, in the alternative, to dismiss the fraudulent misrepresentation claim. (R. 4, Fifth Third's Mot. Dismiss.) Second, Fifth Third filed a motion to strike JF Enterprises' jury trial demand. (R. 6, Fifth Third's Mot. Strike.) On May 31, 2011, Judge Ortrie Smith of the Western District of Missouri ruled on Fifth Third's motion to dismiss for improper venue and transferred the case to the Northern District of Illinois, leaving Fifth Third's motions to dismiss the fraudulent misrepresentation claim and to strike the jury demand pending. (R. 20, Order.) Fifth Third subsequently filed a motion for leave to file counterclaims against JF Enterprises and additional counterclaim defendants that it seeks to join on October 12, 2011. (R. 36, Fifth Third's Countercl. Mot.)

Now pending before the Court are Fifth Third's motions requesting the Court to dismiss the fraudulent misrepresentation claim for lack of particularity under Rule 9(b) or as contractually precluded, to strike JF Enterprises' jury trial demand as contractually precluded, and for leave to file counterclaims and to join counterclaim defendants. (R. 4, Fifth Third's Mot. Dismiss; R. 6, Fifth Third's Mot. Strike.; R. 36, Fifth Third's Countercl. Mot.) In support of its motion to dismiss the fraudulent misrepresentation claim, Fifth Third argues that JF Enterprises has failed to allege fraud with sufficient particularity. (R. 5, Fifth Third's Mot. Dismiss Mem. at 5.) Alternatively, Fifth Third argues that Count IV is contractually precluded by the integration clause of the Settlement Agreement. (*Id.* at 6–8.) In support of its motion to strike JF Enterprises' jury trial demand, Fifth Third argues that it is contractually precluded by the Settlement Agreement's jury trial waiver clause. (R. 7, Fifth Third's Mot. Strike Mem.) Finally, Fifth Third requests the Court to grant it leave to file its proposed counterclaims because the

counterclaims arise out of the same transaction or occurrence that is the subject matter of JF Enterprise's complaint, and to join the additional counterclaim defendants pursuant to Rules 13, 19, and 20 of the Federal Rules of Civil Procedure. (R. 36, Fifth Third's Countercl. Mot. at 4.)

## LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The allegations in the complaint must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *George v. Nat'l Collegiate Athletic Ass'n*, 613 F.3d 658 (7th Cir. 2010) (quoting *Equal Emp't Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)) (internal quotation marks omitted).

JF Enterprises' allegations of fraudulent misrepresentation trigger Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b). Rule 9(b) requires that a plaintiff alleging fraud plead the "circumstances constituting fraud" with particularity. *Id.* These circumstances include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was

4

communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008) (internal quotation marks and citations omitted). On a motion to dismiss under Rule 9(b), the Court accepts the plaintiffs' factual allegations as true, and draws all reasonable inferences in their favor. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). A court may consider materials outside of the pleadings when those materials are referred to in the complaint, concededly authentic, and central to the plaintiff's claim. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

## ANALYSIS

### I.    Motion to dismiss Count IV

Fifth Third first argues that JF Enterprises' fraudulent misrepresentation claim should be dismissed for lack of particularity. (R. 5, Fifth Third's Mot. Dismiss Mem. at 4–5.) The elements of a cause of action for fraudulent misrepresentation are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 94 (Ill. App. Ct. 1st Dist. 2002).[1] Under Rule 9(b), a party who alleges fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). While the exact substance of the particularity standard "may vary on the facts of a given case," the requirement is often described as requiring the "who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.*,

---

[1] The parties do not identify which state law governs the claims in this case, however, the elements of fraudulent misrepresentation do not vary between Illinois and Missouri. *See Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. 2010).

631 F.3d 436, 441–42 (7th Cir. 2011) (internal citations omitted).  The particularity requirement

is designed to protect the defendant against the stigmatic injury that comes with alleging fraud

and to "discourage a sue first, ask questions later philosophy." *Id.* at 441 (internal citations and

quotation marks omitted).

JF Enterprises points to paragraphs 21 and 23 of the complaint in arguing that it meets the

heightened pleading requirements of Rule 9(b).  (R. 13, JF Enterprises' Mot. Dismiss Resp. at 9.)

In the complaint, JF Enterprises alleges that in April of 2009 it entered into the Settlement

Agreement and that it was "motivated to accept the terms of the Settlement Agreement because

of an agreement" on how the extinguished debt would be allocated.  (R. 1, Compl. ¶¶ 21, 23.)

Additionally, JF Enterprises provides an email exchange between Jeremy Franklin, member

manager of JF Enterprises, and Brad Tinsley at Fifth Third discussing the issuance of the 1099-

Cs to JF Enterprises and the other entities.  (R. 1, Compl. ¶¶ 29–30.)  JF Enterprises argues that

this email acknowledges the prior agreement on the allocation of the extinguished debt.  (R. 13,

JF Enterprises' Mot. Dismiss Resp. at 9.)  In these paragraphs, JF Enterprises presents what it

alleges to be the false statement: that the extinguished debt would be allocated in a particular

way.  JF Enterprises also describes how its reliance on this representation caused it to act to its

detriment through tax planning.  (R. 1, Compl. ¶¶ 24–27, 33–38.)

The Court concludes, however, that this level of detail is insufficient under Rule 9(b).

Although states of mind may be pleaded generally, "[t]he rule requires the plaintiff to state the

identity of the person who made the misrepresentation, the time, place, and content of the

misrepresentation, and the method by which the misrepresentation was communicated to the

plaintiff." *Vicom Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).  JF

Enterprises does not identify—in either the complaint or the email it claims "acknowledges" the agreement—the representative of Fifth Third who made the fraudulent misrepresentation, when the fraudulent misrepresentation allegedly occurred, where the fraudulent misrepresentation took place, or the how the fraudulent misrepresentation was communicated to JF Enterprises. *See Windy City Metal Fabricators & Supply, Inc.*, 536 F.3d at 668 (affirming the dismissal of fraud claims where plaintiffs failed to plead who had made a fraudulent statement, when the fraudulent statement was made, and how the fraudulent statement was communicated). JF Enterprises must identify the relevant dates, names, locations, and documents, if any documents exist, surrounding the alleged fraud. Because these details are lacking, the Court finds that JF Enterprises has not met the heightened pleading requirements of Rule 9(b) and dismisses Count IV with leave to amend.[2]

## II.    Motion to strike

Next, Fifth Third requests the Court to strike JF Enterprises' request for a jury trial arguing that it conflicts with the terms of the Settlement Agreement, which includes a waiver to a jury trial. (R. 7, Fifth Third's Mot. Strike Mem.) When a contract is governed by state law, the validity of a jury trial waiver is similarly governed by state law. *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 993–94 (7th Cir. 2008). Here, because the Settlement Agreement states it "shall be construed in accordance with the applicable laws of the State of Illinois and applicable federal law," the Court applies Illinois law. (R. 4, Fifth Third's Mot.

---

[2] Fifth Third also argues that the fraudulent misrepresentation claim is contractually precluded by the integration clause of the Settlement Agreement. (R. 4, Fifth Third's Mot. Dismiss.) Because whether the claim is precluded may depend on the circumstances surrounding the fraudulent misrepresentation, which are not provided, and because it has now dismissed this claim, the Court does not address this argument at this time.

Dismiss, Ex. 1, Settlement Agreement ¶ 27.) While the Illinois Supreme Court has not spoken as to the enforceability of jury trial waivers, it has determined that the enforceability of an arbitration agreement turns upon fundamental principles of contract law, not on a higher "knowing and voluntary" standard sometimes used by other courts. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 106 (Ill. 2006). An agreement to a bench trial cannot logically be treated less favorably than an agreement to arbitrate—an agreement that surrenders more rights. *IFC Credit Corp.*, 512 F.3d at 994. Therefore, in Illinois, the validity of a jury trial waiver is determined by fundamental principles of contract law. *See AEL Fin. LLC v. Tri-City Auto Salvage, Inc.*, No. 08-cv-04384, 2009 WL 3011211, at *3 n.1 (N.D. Ill. Aug. 31, 2009) (discussing the standard to be applied to jury trial waivers under Illinois law).

JF Enterprises makes no claim that the Settlement Agreement or the jury trial waiver is unjust, unreasonable, or invalid for any reason. Rather, it argues that the jury trial waiver does not apply to the current litigation. (R. 14, JF Enterprises' Mot. Strike Resp.) This argument requires the Court to determine the waiver's scope.

Under Illinois law, the Court must interpret the language of the contract in accordance with its plain meaning and must construe the contract as a whole. *Brooklyn Bagel Boys, Inc. v. Earthgrains Ref. Dough Prod., Inc.*, 212 F.3d 373, 378 (7th Cir. 2000) (interpreting Illinois law); *William Blair & Co., LLC. v. FI Liquid Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct. 1st Dist. 2005). The Court also must ascertain and give effect to the intent of the parties. *W.W. Vincent and Co. v. First Colony Life Ins., Co.*, 814 N.E.2d 960, 966 (Ill. App. Ct. 1st Dist. 2004). A written contract is presumed to speak the intention of the parties who signed it, and their intentions must be determined from the language used. *Id.* Additionally, "a court cannot alter, change or modify

8

the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included." *Gallagher v. Lenart*, 854 N.E.2d 800, 807 (Ill. App. Ct. 1st Dist. 2006). A presumption exists against provisions that easily could have been included in the contract but were not. *Id.* Further, where a contract purports on its face to be a complete expression of the parties' entire agreement, courts will not add another term about which the agreement is silent. *Id.* A court's analysis begins with the language of the contract itself, and "[i]f the language unambiguously answers the question at issue, the inquiry is over." *Emergency Med. Care, Inc. v. Marion Mem. Hosp.,* 94 F.3d 1059, 1061 (7th Cir. 1996) (interpreting Illinois law).

The Court turns, then, to the language of the Settlement Agreement. The Settlement Agreement provides that the parties waive their right to a trial by jury "in any litigation based on or arising out of this agreement or the loan documents, any of the transactions contemplated by this agreement or the loan documents, or any course of conduct, dealing, statements or actions between any or all of them and Lender (collectively, 'Claims')." (R. 4, Fifth Third's Mot. Dismiss, Ex. 1, Settlement Agreement ¶ 24) (capitalization and emphasis omitted). Fifth Third argues that the current litigation arises out of "transactions contemplated" by the Settlement Agreement. (R. 7, Fifth Third's Mot. Strike Mem.) JF Enterprises argues that the current claims arise out of the tortious issuance of an additional 1099-C, not out of the Settlement Agreement or any transactions contemplated by the Settlement Agreement. (R. 14, JF Enterprises' Mot. Strike Resp.)

The question of whether this litigation arises out of "transactions contemplated" by the Settlement Agreement has already been addressed by Judge Smith of the Western District of Missouri. (R. 20, Order at 4.) Judge Smith looked at the same clause and found that it did so arise. *Id.* The Court agrees. JF Enterprises alleges that a separate agreement to allocate the extinguished debt exists and that that alleged agreement motivated JF Enterprises to accept the terms of the Settlement Agreement. (R. 1, Compl. ¶ 23.) Insofar as JF Enterprises argues that it was motivated to enter into the Settlement Agreement by the debt allocation, it concedes that it contemplated the allocation of that debt—the transaction giving rise to this litigation. The cancellation of debt was established by the Settlement Agreement, and the current litigation directly flows from this cancellation of debt. (R. 4, Fifth Third's Mot. Dimiss, Ex. 1, Settlement Agreement ¶ 7.) The parties, sophisticated entities represented by counsel, were aware that there were tax implications to the Settlement Agreement. Indeed, the harm allegedly inflicted upon JF Enterprises was caused when the issuance of the 1099-C contradicted its careful tax planning. (R. 1, Compl. ¶¶ 24–27.) The parties' intent—demonstrated by the Settlement Agreement's unambiguous language—was that the jury trial waiver would apply to claims like the one before the Court. The Court accordingly strikes JF Enterprises' jury trial demand.

## III. Motion for leave to file counterclaims and join counterclaim defendants

Finally, Fifth Third requests leave to file counterclaims against JF Enterprises and the additional counterclaim defendants that Fifth Third also seeks to join. (R. 36, Fifth Third's Countercl. Mot.) Specifically, Fifth Third seeks to join the other Borrowers involved in the Settlement Agreement—Olathe's Showcase Cars, Inc. f/k/a Jack Michael Enterprises, LLC, Jeremy Franklin, and Hector Espinosa (collectively, "Additional Counterclaim

Defendants")—and file counterclaims against JF Enterprises and the Additional Counterclaim Defendants related to the prior business dispute that was resolved by the Settlement Agreement. (*Id.* at 1-2.) Fifth Third contends that the filing of the present suit by JF Enterprises rendered the Settlement Agreement null and void, and as a consequence, Fifth Third "is entitled to exercise any and all of its rights and remedies against" JF Enterprises and the Additional Counterclaim Defendants. (*Id.* at 3-4.)

Under Federal Rule of Civil Procedure 13(a), which addresses compulsory counterclaims, a pleading must state as a counterclaim any claim the pleader has against an opposing party if the claim: "(A) arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). JF Enterprises argues that the Court should not grant Fifth Third leave to file the proposed counterclaims because they fail to meet the requirements of Rule 13(a). (R. 39, JF Enterprises' Countercl. Resp. at 3.)

Regarding the first element of a compulsory counterclaim, the Seventh Circuit uses a "logical relationship" test to determine whether the "transaction or occurrence" giving rise to the counterclaim is the same for purposes of Rule 13(a). *Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 470 (7th Cir. 2011). In *Burlington Northern v. Strong*, the Seventh Circuit explained:

> Courts generally have agreed that the words "transaction or occurrence" should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a). . . . As a word of flexible meaning, "transaction" may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*.

907 F.2d 707, 711 (7th Cir. 1990) (internal quotation marks and citations omitted). Accordingly, a court "must examine carefully the factual allegations underlying each claim to determine if the logical relationship test is met." *Id.*

The "logical relationship" test appears satisfied here. In its proposed counterclaims, Fifth Third seeks damages for JF Enterprise's—and the Additional Counterclaim Defendants'—breach of the Settlement Agreement. Despite JF Enterprise's efforts to recharacterize this dispute as having nothing to do with the Settlement Agreement, as discussed above, JF Enterprises seeks damages for conduct by Fifth Third arising out of the Settlement Agreement. Specifically, JF Enterprises alleges that it was "motivated to accept the terms of the Settlement Agreement because of an agreement" with Fifth Third about how the debt extinguished by Fifth Third pursuant to the Settlement Agreement would be allocated. (R. 1, Compl. ¶¶ 22-23.) The basis for this suit—the extinguished debt allocation agreement that JF Enterprises claims was made between it and Fifth Third—is logically related to the basis of Fifth Third's counterclaims—the breach of the Settlement Agreement that extinguished the debt. Although the technical elements of the claims in question are not identical, the totality of the claims, and particularly the respective factual backgrounds of the claims, lead the Court to conclude that the claims are logically related. *See Bd. of Regents of Univ. Wis. Sys.*, 653 F.3d at 470 (noting that the "logical relationship" test "focuses on the facts of the case, rather than on the technical elements of the claims in question").

Whether the second element of a compulsory counterclaim—the Court's jurisdiction over the Additional Counterclaim Defendants—is present here is difficult to determine at this stage due to the parties' cursory treatment of the issue. According to Fifth Third, the Court has both

diversity and supplemental jurisdiction over the Additional Counterclaim Defendants under 28 U.S.C. §§ 1332 and 1367(a). (R. 36, Fifth Third's Countercl. Mot. at 5.) In its reply, Fifth Third also asserts that the Court has personal jurisdiction over the Additional Counterclaim Defendants because they have conducted business in Illinois. (R. 40, Fifth Third's Reply at 4-5.) Although JF Enterprises disputes that the Court "has jurisdiction over the out-of-state defendants sought to be added," JF Enterprises fails to provide any support for this contention or develop it in any way. (R. 39, JF Enterprises' Resp. at 3.) Because JF Enterprises fails to point the Court to any specific impediments to personal jurisdiction, the Court will assume, for purposes of ruling on this motion, that jurisdiction over the proposed Additional Counterclaim Defendants is appropriate. It may be of no matter, however, because if the Court lacks personal jurisdiction over one of the Additional Counterclaim Defendants, "this would make the counterclaim permissive as to that defendant." *Asset Allocation Mgmt. Co. v. W. Emp'rs Ins. Co.*, 892 F.2d 566, 574 (7th Cir. 1989); Fed. R. Civ. P. 13(b). Thus, even if Fifth Third's proposed counterclaims are not compulsory, they may properly be asserted under Rule 13(b). Fed. R. Civ. P. 13(b) ("A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.").

Joinder of the Additional Counterclaim Defendants is also appropriate. Rules 19 and 20 of the Federal Rules of Civil Procedure govern the joinder of additional parties as counterclaim defendants. Fed. R. Civ. P. 13(h). Under Rule 20(a)(2), parties may be joined in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will

arise in the action." Fed. R. Civ. P. 20(a)(2). Here, Fifth Third asserts breach of contract claims against JF Enterprises and the Additional Counterclaim Defendants that arise out of the same transaction, and all of the breaches relate to the Settlement Agreement and the underlying loan documents. Additionally, there are common questions of law and fact relating to the parties' obligations under the Settlement Agreement and whether JF Enterprises' initiation of the present suit rendered the Settlement Agreement null and void for all of the parties. Accordingly, the Court finds that the permissive joinder requirements under Rule 20 are met and joins the Additional Counterclaim Defendants.

## CONCLUSION

For the reasons stated above, the Court GRANTS, with leave to amend, Fifth Third's motion to dismiss Count IV. (R. 4.) The Court also GRANTS Fifth Third's motion to strike JF Enterprises' jury trial demand. (R. 6.) Finally, the Court GRANTS Fifth Third's motion for leave to file a counterclaim and join additional counterclaim defendants. (R. 36.) The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status on December 1, 2011, at 9:45 a.m. to set a firm litigation schedule.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** November 15, 2011